United States District Court
Southern District of Texas
**ENTERED**
July 14, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEONDRA J KHEIR, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 24-3401 |
| | § | |
| COSTCO WHOLESALE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Deondra Kheir, worked for Costco Wholesale Corporation for nearly a decade before she was fired. In her second amended complaint, Kheir alleges that Costco discriminated against her on the basis of her religious beliefs and her medical condition. She alleges that she: (1) had to work a less convenient schedule to take time to observe her Sabbath; (2) was transferred from a position in Costco's marketing department to a less favorable position in the bakery department, albeit for the same pay; and (3) was fired in July 2023. She asserts claims for discrimination under Title VII, 42 U.S.C. § 1981, and the Americans with Disabilities Act, 42 U.S. Code § 12101 *et seq*. She also asserts a claim for a hostile work environment under Title VII; claims for retaliation under Title VII and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; a claim for "disparate impact" under Title VII; and a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

Costco has moved to dismiss Kheir's second amended complaint. (Docket Entry No. 15). Based on the motion and briefs, the record, and the applicable law, the court grants the motion to dismiss. The reasons for this ruling are set out below.

I.  **Background**

Kheir worked for Costco from 2013 to 2023 (Docket Entry No. 14 ¶¶ 10, 32). Kheir identifies as an "Israelite from the 12 Tribes of Israel." (*Id*. ¶ 15). In 2013, Kheir began to observe her religion's sabbath, and Costco provided Kheir with a religious accommodation so she could avoid working from Friday sunset to Saturday sunset. (*Id*. ¶¶ 15-16). She alleges that in November 2020, she was "pulled into the office and interrogated about her religious accommodation."[1] (*Id.* ¶ 14). Around the same time,[2] Costco began requiring Kheir to work an additional three hours during the week to make up for the hours that she took off to observe the sabbath. (*Id.* ¶ 17). Kheir alleges that the added hours burdened her religious observance by forcing her to prepare her sabbath meals on Thursday, rather than Friday. (*Id*. ¶ 20). Kheir alleges that she was the only Costco employee required to work extra hours in order to avoid working during her sabbath. (*Id*. ¶ 19). Kheir alleges that she worked this new schedule between July 1, 2021, to October 7, 2021. (*Id*. ¶ 22).

On October 7, 2021, Kheir took a leave of absence for a surgery to address back issues and urinary incontinence. (*Id.*). Kheir returned to work on November 15, 2021. She worked under medical restrictions for seven weeks as a membership/marketing manager. (*Id.* ¶ 23). Kheir alleges that after Costco allowed her to work this light schedule for seven weeks, she was "summoned to the manager's office and placed on unpaid forced leave by Anthony Stover (Costco)." (*Id.*). She alleges that "[t]he forced leave was based on the same doctor-ordered work restriction submitted on October 6, 2021." (*Id.* ¶ 25). "Costco compensated her retroactively, but did not at first." (*Id.*

---

[1] Kheir alleges that "On November 16, 3030, the Plaintiff got pulled into the office and interrogated about her religious accommodation." (*Id.* ¶ 14). The court construes Kheir's allegation to state that she was "interrogated" by an unspecified Costco employee on November 16, 2020.
[2] Kheir's Second Amended Complaint variously alleges that Kheir was required to work extra hours beginning in 2020 and also beginning in 2021. (*See id*. at ¶¶ 17, 22). For the purposes of this memorandum, and opinion, the court assumes that Kheir began to work extra hours in 2020.

2

¶ 23). On November 24, 2021, another "manager" at Costco sent Kheir a letter informing her that her "religious accommodation is an issue for her medical accommodation." (*Id*.). Kheir alleges that because the doctor ordered that she work only 9-hour days, Costco could not schedule her to work the 10.5-hour 3-days a week shifts that it was requiring to accommodate her sabbath observance. (*Id*. ¶ 26). Kheir alleges that in December 2021, she "submitted a notarized separate statement of material facts to Costco Corporate regarding these matters." (*Id*. ¶ 27). Kheir was temporarily reassigned to work in the bakery department from December 2021 until January 2022, on a schedule that accommodated her sabbath observance. (*Id*.). Kheir's pay remained the same, but she alleges that the bakery role was physically more demanding. (*Id*.).

In January 2022, Kheir returned to her marketing job. (*Id*. ¶ 28). On March 5, 2023, Kheir was scheduled to work from 11:30 a.m. to 9:00 p.m. (*Id*. ¶ 29). At 9:30 p.m., Kheir tried to return home after her shift to take some medication. (*Id*.). Kheir's supervisor asked her to remain in the building "due to alarm issues." (*Id*.). Kheir nevertheless left the building at 9:50 p.m. before the alarm issues were resolved. (*Id*). She claims she was not compensated for staying an additional 50 minutes after her shift ended. (*Id*.).

Kheir alleges that on the following day, she was "pulled into the office and was yelled at by the general manager [Scott Akrom] about leaving" the previous night before the alarm issues were resolved. (*Id*. ¶ 30). She was asked to write a statement explaining why she had left the building. (*Id*.). She alleges that when Akrom pulled her into his office and yelled at her, she felt that he was "effectively holding her hostage." (*Id*.). She refused to stay or to complete the statement that Akrom requested. (*Id*.). Kheir alleges that she called Costco's corporate office to make a formal complaint about Akrom's behavior. (*Id*). After leaving his office, she alleges that certain Costco "corporate officials" noticed that she was having a "nervous breakdown" and told

3

her to tell Akrom that she was going home sick. (*Id.* ¶ 31). When she did so, Akrom told Kheir that she was suspended without pay. (*Id.* ¶ 31).

Several Costco employees then contacted Kheir and asked her for a statement about the incident with Akrom. (*Id.*). Kheir met with two Costco officials and discussed whether she would sign a contract preventing her from disclosing "evidence" related to her conversation with Costco officials on November 16, 2020, about her religious accommodations. (*Id.*). Kheir refused to turn over the documents relating to the November 16, 2020, meeting. (*Id.*) Kheir alleges that on March 22, 2023, a Costco vice president, Kim Brown, "had an unknown man come to [Kheir's] house and drop off a letter from her." (*Id.*). That letter stated that Kheir would remain on suspension without pay until she returned documents to Costco relating to the November 16, 2023, meeting about Kheir's religious accommodations. (*Id.*). Kheir claims that "Kim was referring to the documents of Costco doing an audit from 2017 to 2020 of the Plaintiff's schedules against three major religious holy days." (*Id.*).

On April 10, 2023, Kheir returned to Costco for another meeting to discuss her employment status. (*Id.*). She was "urged to sign a transfer request form stating, 'demotion or step down.'" (*Id.*). Kheir refused to sign the form. (*Id.*). It is unclear when Kheir returned to work after this meeting, but she alleges that between April 18 and 25, 2023, she was placed on leave so that she could get mental health counseling. (*Id.* ¶ 32). On July 6, 2023, Kheir again refused to accept a demotion or transfer. (*Id.*). On July 7, 2023, Kheir was fired for violating Costco's medical leave policy. (*Id.*). Kheir received the termination letter on July 9, 2025. (*Id.*). Kheir alleges that Costco's actions amount to discrimination based on religion, gender, race, and "leave issues," which the court construes to refer to her claim of a need for disability accommodation. (*Id.* ¶ 33).

4

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial

5

notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### III. Analysis

#### A. The Sex, Race, and National Origin Discrimination Claims

Kheir alleges that "Costco engaged in discriminatory behavior towards [her], based upon her race, gender, disability, religious accommodation, and or national origin by creating a hostile work environment." (Docket Entry No. 14 ¶ 40). But Kheir alleges no facts that could show discrimination, harassment, or retaliation on the basis of her race, sex, or national origin. She alleges that she is female and African American, but she does not mention her national origin. She does assert facts that could show discrimination on the basis of religion, but not on the basis of race, sex, or national origin. Her claims for discrimination under Title VII on the basis of those protected characteristics are dismissed. The court turns to the sufficiency of Kheir's allegations that Costco discriminated against her on the basis of her religious beliefs.

#### B. The Religious Discrimination Claim

To state a prima facie case of religious discrimination under Title VII, the plaintiff must allege facts sufficient to show that: "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014).

Kheir has pleaded facts meeting the first three elements. Costco argues that Kheir's complaint "provides no basis to draw an inference that Kheir's termination was the result of intentional discrimination on the basis of her religion or religious accommodation." (Docket Entry No. 15 at 13). Kheir alleges that she was fired after she refused to "accept" a transfer or demotion.

6

She alleges that Costco began to pressure her into agreeing to a transfer or demotion after the incidents when Kheir left the building during the "alarm issues" and when Akrom yelled at her for doing so and for failing to provide a statement. The court agrees that Kheir has failed to plead any causal connection between Costco firing her and her religious beliefs. Her claim for religious discrimination fails on that basis.

### C. The Hostile Work Environment Claim

Kheir claims that she was subjected to a discriminatory hostile work environment based on her race, gender, disability, religion and her national origin. To establish a hostile-work-environment claim, a plaintiff must prove that:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). The harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and it cannot be "measured in isolation." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

As discussed, Kheir's complaint is largely devoid of allegations based on her race, gender, or national origin. She has not plausibly alleged a hostile work environment on the basis of her religion. Kheir alleges that she was "interrogated" about her religious practices in November 2020. She alleges that almost two and a half years later, Costco sent someone to her house to ask her to

7

turn over "evidence" related to that alleged interrogation. Kheir's allegations about these two isolated incidents, which occurred years apart, do not state a claim for a discriminatory hostile work environment based on religion or other protected class. That claim is dismissed.

### D. The Disparate Impact Claim

Kheir also seeks to recover for disparate impact under Title VII. "[A] disparate-impact claim targets employer practices that 'are not intended to discriminate but in fact have a disproportionately adverse effect on minorities.'" *Okeke v. Adm'rs of Tulane Educ. Fund*, No. 21-30451, 2022 WL 1025991, at *7 (5th Cir. Apr. 6, 2022) (per curiam) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)) "To sustain a disparate-impact claim under Title VII, a plaintiff must (1) identify a specific, facially neutral policy or practice of the employer, and (2) show that the policy or practice has caused a disproportionately adverse effect on a protected class." *Id*. Kheir has failed to identify any policy or practice by Costco that has an adverse effect on a protected class. Her disparate-impact claim must also be dismissed.

### E. The Section 1981 Claim

Kheir claims damages under 42 U.S.C. § 1981. It is well-established that § 1981 prohibits only discrimination based on race, or in some contexts, on national origin. *See Ingram v. Papa John's Int'l, Inc.*, 171 Fed. Appx. 439, 441 (5th Cir. 2006) ("Race, however, is the only protected class under § 1981."). Kheir may not recover under this statute, because she fails to plausibly allege any discrimination based on her race or national origin, as opposed to her religion. Her claim under § 1981 is dismissed.

### F. The Title VII Retaliation Claim

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful

8

employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).  When a plaintiff relies on circumstantial evidence to prove retaliation, the *McDonnell Douglas* framework applies.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty*, 79 F.4th 494 (5th Cir. 2023) (en banc).  Under the first step of *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of retaliation: "(1) the employee engaged in activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.  *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting reference and quotation marks omitted).

Kheir alleges that she engaged in a protected activity by requesting a religious accommodation and an accommodation based on her post-surgery medical restrictions.  But she also alleges that Costco provided her with the accommodations she requested.  To the extent that Kheir alleges that the accommodations that Costco provided her—asking her to work an additional three hours during the week to make up for her hours not worked to accommodate her religious observance and transferring her to the bakery department—are adverse employment actions, those allegations fail.  In both instances, Kheir's pay remained the same.  And to the extent that she alleges that her requests for accommodation led to her ultimate termination, those requests for accommodation are too temporarily distant from her firing to form the basis for her claim.  She alleges that she requested her religious accommodation in 2020, and her medical accommodation in 2021.  She was fired in 2023.  Her allegations fail to show a causal connection between her

9

requests for accommodation and her firing. Her retaliation claim under Title VII must be dismissed.

### G. The Claim for Retaliation under the FMLA

As with claims for retaliation under Title VII, claims for retaliation under the FMLA are analyzed under the *McDonnell Douglas* framework. *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576 (5th Cir. 2021). Kheir alleges that she took medical leave from July 1, 2021, to October 7, 2021. She alleges that Costco required her to take "forced leave" in November 2021 for an unspecified period after Costco realized that she was unable to perform her normal work duties following her surgery. She alleges that Costco "compensated her retroactively" for the time that she spent on "forced leave." Kheir alleges that Costco retaliated against her for taking medical leave in 2021 by firing her in 2023. Her FMLA claim that her medical leave in 2021 was the basis for her retaliatory termination in 2023 is dismissed for lack of facts that could show a causal connection. Again, the time lapse between her medical leave and termination is too long to support a claim for retaliatory termination.

### H. The FLSA Claim

Kheir's complaint contains a single allegation regarding her hours worked and pay: "she was treated as an hourly employee when she should have been treated as a salaried employee, off an on throughout her employment." (Docket Entry No. 14 ¶ 66). These allegations do not provide Costco with fair notice of her FLSA claim. She does not allege what periods she was paid by the hour when she should have been salaried, or whether she had any employment agreement that indicated she should have been paid as a salaried employee. Kheir's conclusory allegations fail to state a claim under the FLSA.

I. **The ADA Claim**

To state a prima facie case of disability discrimination, Kheir must sufficiently allege that (1) she is a qualified individual; (2) that she has a disability; and (3) that she suffered a negative employment action because of the disability. *Austgen v. Allied Barton Sec. Servs.*, 815 Fed. App'x. 772, 776-77 (5th Cir. 2020). Kheir alleges that Costco discriminated against her "because of her back issues that developed when [Kheir] was transferred to the bakery." (*Id*. ¶ 73). She alleges, vaguely, that the discrimination negatively affected her "advancement[,] potential job training, renewal, and other terms, conditions, and privileges or her employment." (*Id*.). She claims that because of her back issues, she received "write-ups, and or verbal warnings, comments, and insinuations that [Kheir] could not perform where she worked as well as threatened and completed disciplinary action." (*Id*.). But "in the context of a discrimination claim, only 'ultimate employment decisions' are actionable." *Austgen*, 815 Fed. App'x at 777 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007). Kheir does not allege that her unspecified "back issues" led to her termination, but only that they led to various write-ups and unspecified harm to her future employment prospects at Costco. That is insufficient to state a claim for discrimination under the ADA. The ADA claim fails.

IV. **Conclusion**

Costco's motion to dismiss, (Docket Entry No. 15), is granted. All of Kheir's claims are dismissed, with prejudice, because amendment would be futile. Final judgment will be separately entered.

SIGNED on July 10, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge